UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VITA COFFEE LLC, *et al.*,

*Plaintiffs*,

v.

FIREMAN'S FUND INSURANCE COMPANY, *et al.*,

*Defendants*.

CASE NO. 2:20-cv-01079-BJR

ORDER DENYING MOTION FOR RECONSIDERATION

## I. INTRODUCTION

Before the Court is Plaintiffs ES Restaurant Group, 13 Coins Management, LLC, and Canlis, Inc.'s Motion for Reconsideration. Mot. for Recons., Dkt. No. 69 ("Mot."). Other Plaintiffs in this consolidated action joined the Motion after its submission.[1] Having reviewed the Motion, the oppositions thereto, the record of the case, and the relevant legal authorities, the Court

[1] *See* Worthy Hotels, Inc. *et al.*, Vita Coffee, LLC, Naccarato Restaurant Group, Inc., and Weimac, LLC's Joinder in ES Restaurant Group, Inc., *et al.*'s Mot for Recons., Dkt. No. 72; Weimac LLC, *et al.*'s Joinder in ES Restaurant Group, Inc., *et al.*'s Mot for Recons., Dkt. No. 73.

will deny Plaintiffs' Motion.

## II. BACKGROUND

This matter is one amongst a multitude of cases across the United States in which businesses are seeking coverage from their insurance companies for income lost due to the COVID-19 pandemic. This District chose to assign all such matters to the undersigned who consolidated the earliest of these actions into ten cases based on insurance group. *See* Order on Consolidation, Dkt. No. 36. The Court recently published an Order addressing all ten consolidated cases, holding there was no coverage for losses due to COVID-19. *See* Order Granting Mots. to Dismiss, Dkt. No. 66 ("Order on Consolidated Cases").[2]

In that Order, the Court held that all of the relevant policies required "direct physical loss of or damage to" covered property to trigger coverage and COVID-19 did not cause such loss or damage. *Id.* at 15–25. Additionally, the Court held that extension provisions, such as Extra Expense or Civil Authority, failed to provide independent grounds for coverage where coverage was not triggered in the first instance. *Id.* at 25–28. The Court addressed the specific claims of the Plaintiffs currently before the Court, who all purchased insurance from Defendant Fireman's Fund or an affiliate. *Id.* at 51–58. In addition to reaffirming its general findings that coverage was not available based on the lack of physical loss or damage, the Court rejected arguments that certain Plaintiffs were entitled to coverage under unique Crisis Event Business Income, Communicable Disease Coverage, Dependent Property Coverage, and Business Access Coverage

[2] Also available at *Nguyen, et al. v. Travelers Cas. Ins. Co., et al.*, No. 20-cv-00597, --- F. Supp. 3d ----, 2021 WL 2184878 (W.D. Wash. May 28, 2021).

provisions. *Id.* at 54–57.

On June 11, 2021, ES Restaurant, 13 Coins, and Canlis submitted the now-pending Motion for Reconsideration. Mot., Dkt. No. 69. They claim the Court committed manifest error in three areas: (1) in relying on the wrong dictionary definition of "loss"; (2) in failing to properly consider Washington state precedent; and (3) in misapplying the Federal Rule of Civil Procedure 12(b)(6) standard. Mot. at 3–8.

## III. LEGAL STANDARD

"Motions for reconsideration are disfavored" and "[t]he court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." Local Rules W.D. Wash. LCR 7(h)(1); *see also* Standing Order for All Civil Cases, Dkt. No. 26 at 4 (stating that Motions for Reconsideration are "discouraged" and that "Motions which reassert prior arguments or raise new arguments that could have been made earlier will be summarily denied").

## IV. DISCUSSION

### A. Direct Physical Loss or Damage

All of the relevant policies require "direct physical loss or damage" or "direct physical loss of or damage to" covered property to trigger coverage. Order on Consolidated Cases at 53–54 (quoting Decl. of Anthony Todaro, Ex. A, Dkt. No. 11-1 at 30 (Policy of Vita Coffee, hereinafter "Vita Coffee Policy")). In determining the meaning of "loss" in this undefined policy term, the Court turned to the dictionary to decipher its common meaning, finding helpful the definitions "the act or fact of being unable to keep or maintain something" or "the act of losing possession" of

something. Order on Consolidated Cases at 18 (quoting *Loss*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/loss (last visited May 28, 2021)). Based on its analysis, the Court determined that the relevant policies did not cover intangible loss of use, functionality, or, as the Court's Order termed, "purely economic losses." *Id.* at 19.

Plaintiffs' Motion for Reconsideration faults the Court for relying on these definitions, rather than adopting a more favorable one that would have included the loss of use or functionality, as in another definition provided by Webster's Dictionary. Mot. at 3–4 (including the definition "the partial or complete deterioration of or absence of physical capability or function" (quoting *Loss*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/loss (last visited June 7, 2021))).

As the Court outlined in its previous Order, the Court gives undefined terms in an insurance policy their "plain, ordinary, and popular meaning." Order on Consolidated Cases at 13 (quoting *Xia v. ProBuilders Specialty Ins. Co.*, 400 P.3d 1234, 1240 (Wash. 2017)). This meaning is determined according to the "expectations of the average insurance purchaser" as, when "constru[ing] the language of an insurance policy, [the Court] give[s] it the same construction that an average person purchasing insurance would give the contract." *McLaughlin v. Travelers Com. Ins. Co.*, 476 P.3d 1032, 1037 (Wash. 2020) (quoting *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007)). In determining ordinary meaning, the Court may make "reference to dictionary definitions." *Kut Suen Lui v. Essex Ins. Co.*, 375 P.3d 596, 601 (Wash. 2016) (citing *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 882 P.2d 703, 718 (Wash. 1994)). If, after such an examination, the Court determines that the undefined term is ambiguous—or "'susceptible to more than one *reasonable* interpretation'"—the Court only then "adopt[s] the

definition that most favors the insured." *McLaughlin*, 476 P.3d at 1037 (emphasis added) (quoting *Holden v. Farmers Ins. Co. of Wash.*, 239 P.3d 344, 347 (Wash. 2010)).

Plaintiffs' argument fails because their preferred definition incorporating loss of intangible functionality is unreasonable given the context of the term. Washington law—as just outlined—provides no rule prioritizing or ranking dictionary definitions. Instead, the dictionary is a tool courts may use in determining the common meaning of an undefined term; its definitions are not "controlling." *Jack v. Standard Marine Ins. Co., of Liverpool, England*, 205 P.2d 351, 354 (Wash. 1949).

Merely because a single word may have multiple dictionary definitions designed to help a reader understand its bounds, does not make the word ambiguous when used in a contract. If this were the case, ambiguity would abound as the English language is often a many, varied, and enigmatic thing. Instead, the Court uses context, meaning, and usage to determine the intent the parties ascribed when utilizing certain commonly understood language. *See State Farm Fire & Cas. Co. v. Ham & Rye, L.L.C.*, 174 P.3d 1175, 1178 (Wash. Ct. App. 2007) ("Insurance policies are contracts, and courts seek to determine the contracting parties' intent by resorting to a fair, reasonable, and sensible construction of the contract's language, as the average insurance purchaser would understand it." (citing *Am. Nat. Fire Ins. Co. v. B & L Trucking & Constr. Co.*, 951 P.2d 250, 256 (Wash. 1998))). Singular words and terms cannot be understood in isolation, as policies must be construed holistically. *See Certification from U.S. Dist. Ct. ex rel. W. Dist. of Wash. v. GEICO Ins. Co.*, 366 P.3d 1237, 1239 (Wash. 2016).

Here, "loss" is modified by the preceding "physical," appears in close proximity to "damage," and affects real property. *See* Vita Coffee Policy at 83 (defining "Property Insured" as

"business real property, business personal property, or both"). This unique linguistic phrase appears throughout the relevant policies, promoting a consistent understanding of the term in context rather than one of "loss" in isolation. An understanding promoting an intangible "loss of use" cannot reasonably be squared with the use and construction of the phrase which requires a causal event to produce a physical effect similar to damage on real property, as the placement of "loss" in the phrase grammatically requires. This understanding fits with the purpose of property insurance as, after all, commercial property insurance is designed to insure, first and foremost, the business's physical property. *See* Vita Coffee Policy at 30 (beginning with Property Coverage, requiring "direct physical loss or damage to Property Insured," and, only after, providing Business Income and Extra Expense Coverage covering lost earnings "arising from direct physical loss or damage to property").

The Court went into greater depths in its previous Order, and will not do so again here. *See* Order on Consolidated Cases at 15–21. Suffice it to say, the Court finds no manifest error in discounting a non-controlling dictionary definition that does not comport with the actual use of the defined word in the insurance policy.

**B. Washington State Precedents**

In construing the terms of an insurance policy, federal courts sitting in diversity, as this one does here, apply state substantive law, including the state substantive law regarding insurance policy construction. Order on Consolidated Cases at 13 (citing *Indian Harbor Ins. Co. v. City of Tacoma Dep't of Pub. Utils.*, 354 F. Supp. 3d 1204, 1212 (W.D. Wash. 2018)). In its Order on Consolidated Cases, the Court surveyed the relevant state caselaw regarding commercial property insurance and determined that no Washington Supreme Court precedent controlled, leading the

Court to predict how the Washington Supreme Court would hold. *Id.* at 22–25 ("Where the state's highest court has not squarely addressed an issue, [the Court] predict[s] how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." (quoting *Judd v. Weinstein*, 967 F.3d 952, 955–56 (9th Cir. 2020))). In reviewing the relevant precedent, the Court determined that, based on past caselaw, the "Washington Supreme Court would decide that the term 'physical loss' requires dispossession of property" rather than merely the loss of use of the property. *Id.* at 25.

Plaintiffs claim the Court overlooked *Neer v. Fireman's Fund American Life Insurance Co.*, 692 P.2d 830 (Wash. 1985), and *Graff v. Allstate Insurance Co.*, 54 P.3d 1266 (Wash. Ct. App. 2002), in this analysis. Mot. at 4–6. Plaintiffs are incorrect.

*Neer* examined whether a Loss of Life Accident Indemnity policy would cover injury sustained after the plaintiff fell 50 to 60 feet from a tree, severing his spinal cord and leaving him unable to use his feet. 692 P.2d at 831. The relevant policy covered "loss of both feet" and defined "loss" as "complete severance through or above the . . . ankle joint." *Id.* at 832. In reaching its decision that the policy provided the plaintiff coverage, the Supreme Court of Washington stated that, in this context, "Washington has adopted as a definition of loss, loss of use or function." *Id.*

In reaching this conclusion, the Supreme Court focused its attention on the term "severance" within the definition of loss, rejected an understanding that required dismemberment or amputation, and held that the plaintiff had lost his feet as a result of severance of his spine, which is above the ankle joint. *Id.* at 833–34.

As this recitation shows, the Supreme Court reached its coverage conclusion examining a

different policy, in a different realm of insurance, where the policy included a definition of "loss" and involved a different undefined term, under different factual circumstances. Under such conditions, the Court cannot say this holding controls the cases before it.

In *Graff*, the Washington Court of Appeals examined whether a landlord's insurance policy would cover damage caused by a tenant's methamphetamine laboratory under a vandalism clause, or whether such damage would be excluded under a contamination exclusion provision. 54 P.3d at 1267. That Court found coverage.

Again, the case presents a different factual scenario implicating policy provisions not at issue in this case. Thus, *Graff* does not control and is, at best, "datum" which the Court may utilize to determine what the Washington Supreme Court would hold if confronted by the situation before this Court. *See Fast Trak Inv. Co. v. Sax*, 962 F.3d 455, 465 (9th Cir. 2020) ("An intermediate state appellate court decision is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." (quoting *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982))).

**C. Findings of Facts Versus Conclusions of Law**

Plaintiffs claim that in the course of reaching its conclusions, the Court engaged in several instances of impermissible fact finding contrary to the Rule 12(b)(6) standard. Mot. at 6–8. Specifically, Plaintiffs claim the Court made impermissible findings of fact regarding (1) the science behind COVID-19's causing of damage and mechanisms of loss, (2) whether the closing of their premises was "necessary," (3) the actual presence of the virus at their premises, and (4) the reasonableness of the Plaintiffs' Extra-Contractual Claims. Mot. at 7–8.

It is axiomatic that while reviewing a motion to dismiss under Rule 12(b)(6), the Court

accepts all factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party, here Plaintiffs. Order on Consolidated Cases at 11–12 (citing *Young v. State*, 992 F.3d 765, 778 (9th Cir. 2021)). At the same time, the Court need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); *see also Wilson v. Craver*, 994 F.3d 1085, 1090 (9th Cir. 2021) ("[The Court] need not accept as true legal conclusions couched as factual allegations."). For example, the Court "need not accept as true legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As the Ninth Circuit recently summarized, the standard on a motion to dismiss "require[s] well-pleaded facts, not legal conclusions, that 'plausibly give rise to an entitlement to relief.'" *Whitaker*, 985 F.3d at 1176 (citations omitted) (first citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); and then quoting *Iqbal*, 556 U.S. at 679.

Reviewing Plaintiffs' alleged errors, the Court finds no cause to reconsider its previous conclusions.

*1. <u>COVID-19 Science</u>*

Plaintiffs point to several sections of Canlis and 13 Coins' operative Complaints which address the science of COVID-19's transmission, citing or quoting scientific studies. Mot. at 7. For example, they highlight:

(1) "SARS-CoV-2 can remain suspended in the air and travel far from the source on air currents due to HVAC systems and natural airflow." *13 Coins Mgmt. LLC et al v. Nat'l Surety Corp.*, Compl., No. 21-cv-00178, Dkt. No. 1-1 ¶ 57 (internal quotations and citations removed);

(2) Transmission also occurs from property to person when virus-containing droplets land on surfaces creating a "fomite," and a person comes into contact with the property and then touches their eyes, nose, or mouth. *Id.* ¶ 59 (internal citation removed); and

(3) SARS-CoV-2 can survive on surfaces for hours, days, or weeks, depending on the type of surface affected by the virus. *Canlis Inc. v. Fireman's Fund Ins. Co.*, Compl., No. 21-cv-00373, Dkt. No. 1-3 ¶ 40 ("Canlis Compl.").

These facts, however, do not contradict the Court's conclusions that COVID-19 does not damage the real property Plaintiffs' policies insured. *See* Order on Consolidated Motions at 16–17 (concluding that COVID-19 does not cause "direct physical damage"). Accepting these allegations as true, as the Court must and did, no damage can be shown to the underlying property itself, merely that, in some circumstances, inanimate objects can assist in the transmission of the virus. Again, the virus causes harm to people, not property.

*2. Necessary Closures*

Plaintiffs claim the Court erred in finding that Plaintiff ES Restaurant could not show a "necessary closure" because it was able to switch to carry out services. Mot. at 7 (citing *ES Rest. Grp. Inc. v Fireman's Fund Ins. Co.*, Compl., 20-cv-01193, Dkt. No. 1-1 ¶ 39) ("ES Compl."). This necessary closure was significant as ES Restaurant's insurance policy contains a unique Crisis Event Business Income Provision which requires such a closure to trigger coverage. *ES Rest. Grp.*,

Decl. of Anthony Todaro, Ex. A, No. 20-cv-01193, Dkt. No. 5-1 at 91,[3] 94[4] (Insurance Policy of ES Restaurant Group, hereinafter "ES Policy") (emphasis added).

Here, the Court merely read ES Restaurant's Complaint and took it at face value. While its Complaint does claim the Group "closed its restaurants because of fortuitous premises contamination and impairment to its Properties" on March 16, 2020, ES Compl. ¶¶ 31, 39, the Complaint also states that "ESR resumed its operations in part by offering small take-out menus from selected locations during shortened hours," *id.* ¶ 42. Such actions were in accordance with the Governor's Proclamations which sought to stem the spread of COVID-19 by restricting access to businesses, but never prohibiting food services businesses from conducting take out services. *See* Wash. Proclamation No. 20-13 at 3 (Mar. 16, 2020)[5] ("This Proclamation does not prohibit the sale of prepared food or beverages that are otherwise legally delivered or taken out of the venue for consumption or the purchasing of groceries that are not consumed within the premises, more

---

[3] Stating

1. Crisis Event Business Income
a. We will pay for the actual loss of crisis event business income you sustain due to the necessary suspension of your operations during the crisis event period of restoration. The suspension must be caused by or result from a covered crisis event at your covered premises.

[4] Stating

1. Covered crisis event means the following:
b. Premises contamination. *Necessary closure* of your covered premises due to any sudden, accidental and unintentional contamination or impairment of the covered premises or other property on the covered premises which results in clear, identifiable, internal or external visible symptoms of bodily injury, illness, or death of any person(s). This includes covered premises contaminated by communicable disease, Legionnaires' disease, but does not include premises contaminated by other pollutants or fungi.

[5] Available at https://www.governor.wa.gov/sites/default/files/proclamations/20-13%20Coronavirus%20Restaurants-Bars%20%28tmp%29.pdf

commonly known as drive-through, take-out, and delivery services."); *see also* ES Compl. ¶ 25. Thus, taking the well-pleaded facts of the Complaint as true, the Group's restaurants were never necessarily closed.

"Necessary closure" or "necessary suspension," as the Provision requires, is critical as it informs the losses the Provision intends to cover, namely the "crisis event period of restoration." ES Policy at 91. This period of recovery is defined as beginning "[w]ith the date of the covered crisis event at your covered premises" and ending with "when the operations at your covered premises should be returned to the condition that would have existed had the covered crisis event not occurred using reasonable speed." *Id.* at 95. As Plaintiffs' pleadings make evident, there was no such period of recovery. Plaintiffs were able to keep utilizing their businesses for take out services, as permitted by the Governor's Proclamations. Further, there was no restoration to be accomplished as what is required for Plaintiffs to return to full services is for the Governor to lift COVID-19 restrictions, not the repair or remediation of their property. *See, e.g.*, *Star Buick GMC v. Sentry Ins. Grp.*, No. 20-cv-03023, 2021 WL 2134289, at *6 (E.D. Pa. May 26, 2021) ("[T]here is also no 'period of restoration' connected to the orders; rather, once government restrictions are lifted, the dealerships may reopen."); *Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*, No. 20-cv-2171, 2021 WL 1945712, at *9 (E.D. Pa. May 14, 2021) ("In short, nothing in the Amended Complaint suggests that Plaintiff's Property needs to be repaired, rebuilt, replaced, or moved to a new location. Rather, Plaintiff's ability to operate fully depends solely on whether the Closure Orders are in effect at any particular time. Should the Closure Orders be lifted, Plaintiff may immediately reopen its business without any 'period of restoration.'").

*3. Actual Presence*

Third, Plaintiffs Canlis and ES Restaurant Group fault the Court for stating that they failed to plead the actual presence of COVID-19 on their premises. Mot. at 7. Upon closer examination, they are correct that both Complaints made at least passing refences to confirmed cases on the premises. *See* Canlis Compl. ¶ 58 (stating "several Canlis employees have tested positive for COVID-19"); ES Compl. ¶ 31 (stating "ESR has had at least three confirmed cases of COVID-19 on its Properties").

As the Court explained in its Order on Consolidated cases, however, pleading actual presence is immaterial as the virus, when present, does not damage real property for the purpose of triggering coverage. Order on Consolidated Case at 21. Additionally, as outlined above, actual presence does not trigger coverage under the Crisis Event Business Income provision. In this case, the closure of Plaintiffs' premises does not result from a specific event but, rather, a governmental decree. *See also* Canlis Compl. ¶¶ 59 (conducting take out and outdoor services), 60 (claiming COVID-19 caused physical damage from presence), 61 ("[the Governor's Proclamations] also caused the physical loss of Canlis's Property").

*4. Extra-Contractual Claims*

Plaintiffs claim the court erred in dismissing their Extra-Contractual Claims, such as Insurance Bad Faith, violations of the Washington Consumer Protection Action and Insurance Fair Conduct Act, and Negligence. Mot. at 7–8. Plaintiffs point to several errors made by Fireman's Fund in the course of denying Plaintiffs' coverage, citing incorrect quotations of a policy provision or stating that a policy contained a Virus exclusion, where it did not. Even accepting these allegations as true, where Fireman's Fund correctly denied coverage, Plaintiffs cannot establish

bad faith or negligence. As the Court stated in its previous order, "since the Court has found that COVID-19 does not cause physical loss or damage, denial of coverage on these grounds was reasonable" and any Extra-Contractual Claims premised on unreasonable denial "must fail." Order on Consolidated Cases at 32–33.

Based on the foregoing, the Court finds no manifest error in its application of the Rule 12(b)(6) standard.

**V. CONCLUSION**

Based on the foregoing, the Court hereby DENIES Plaintiffs' Motion for Reconsideration.

DATED this 21st day of July, 2021.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE